Gordon **ANDERSON** et al., Plaintiffs,

v.

Salton **SANDS**, a corporation, and Cal E. Dexter, Defendants.*

No. 74–435–WMB.

United States District Court, C. D. California.

June 16, 1975.

---

* Consolidated with:
*Biren v. Salton Sea Air Park Estates, Inc.*, CV 74–436–WMB; *Andrews v. Holly Corp.*, CV 74–437; *Blanco v. Noram Development Co.*, CV 74–438; *Francis v. Calicopia Corp.*, CV 74–439; *Cross v. Marina Vista Estates*, CV 74–440; *Beede v. M. Penn Phillips Co.*, CV 74–441; *Abernathy v. Salton Sea Estates, Inc.*, CV 74–442; *Atkinson v. Vosburg Meir, Inc.*, CV 74–443; *Babicky v. Salt N'Sea, Inc.*, CV 74–444; *Bark v. Salt 'N Sea Golf Development*, CV 74–445.

Mackey, Klein & Dawson, Los Angeles, Cal., for all plaintiffs in consolidated cases.

Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendant Holly Corp. in 74–437.

Meserve, Mumper & Hughes, Los Angeles, Cal., for defendants M. Penn Phillips in 74–437 and 74–441 and Salton Sea Estates, Inc. in 74–442.

Law Offices of David Daar, Los Angeles, Cal., for defendants in 74–438 and 74–441.

Pettit, Evers & Martin, Los Angeles, Cal., for defendants Robert Barry and Calicopia Corp in 74–439.

Schwartz, Alschuler & Grossman, Los Angeles, Cal., for defendants in 74–440.

Bishop . M. Moore, Arcadia, Cal., for defendant Salt N'Sea, Inc. in 74–444.

## ORDER OF DISMISSAL

BYRNE, District Judge.

It is important that all persons connected with these lawsuits understand the reasons for these orders of dismissal.

The actions have been dismissed because the prospective plaintiffs were never properly apprised by their "representatives" of certain essential information concerning the true nature of their participation in these proceedings. For example, the Court found that the prospective plaintiffs were either not informed or were misinformed about the nature of their relationship with Mr. David J. Levenkron; about the nature of the arrangement for legal representation by the law firm of Mackey, Klein and Dawson; and about their potential liability for costs in these actions.

In addition, the Court found that the prospective plaintiffs were not informed or were misinformed about the use of over $200,000.00 of "registration fees" which they had submitted to Mr. Levenkron. In particular, the prospective plaintiffs were not informed that the Salton City Area Property Owners Association was not a formal organization but merely a fictitious name under which Mr. Levenkron was individually doing business; and that Levenkron was not acting, as he had claimed, as "trustee" of the registration fee funds. In fact, Mr. Levenkron exercised sole authority over disbursement of these funds and has used the funds to pay to himself, his wife, or for their benefit, approximately $49,000.00. Finally, the prospective plaintiffs were not advised or were misinformed as to the fact that registration fee funds were used by Levenkron to pay a non-contingent retainer fee to the Mackey firm of $110,238.00.

The details of these finds are more fully set forth in this Order. The Order discusses the history of the proceedings with emphasis upon the information disclosed during a series of hearings held before the Court in January, February and March, 1975.

## I

## FIRST ORDER OF DISMISSAL

The eleven related actions were filed by the Mackey firm on February 21, 1974, with approximately 1,500 persons named as individual plaintiffs. Because of questions raised as to whether the

individual plaintiffs authorized the Mackey firm to represent them, the Court ordered that the firm file all of the documentation upon which it based its claim to be authorized to represent such plaintiffs. This order, issued on June 5, 1974, applied only to seven of the eleven actions. In the remaining four lawsuits, no defendant had been properly summoned before the Court.[1]

On or about June 11, 1974, the Mackey firm responded to this order by filing a form questionnaire which, according to the Mackey firm, had been submitted by each named plaintiff to Mr. Levenkron along with a payment of $100.00. This form questionnaire begins with the printed words, "Dear Mr. Levenkron: Please be advised that we will join you in a class action suit as per your letter attached . . . ." Thereafter, spaces are provided for information regarding the location and price of the property purchased in the Salton Sea area.[2] The Mackey firm submitted to the Court an "Attorney's Retainer Agreement" dated January, 1974, executed by Mr. Levenkron purportedly on behalf of all the plaintiffs named in these actions and Newsletters sent by Mr. Levenkron to the "Salton City Area Property Owners Legal Action Group", indicating, among other things, that the Mackey firm had been retained by him on behalf of the "Group".

In addition, copies of certain communications between Mr. Levenkron and some of the prospective plaintiffs prior to the filing of these lawsuits were submitted to the Court. These documents included a transcript of Mr. Levenkron's speech of November 9, 1973, at Van Nuys, California, and certain information circulars mailed by Mr. Levenkron. It should be noted that one such circular, dated November, 1973, states that the registration fees were "deposited

into a 'Trust Account' specifically established for the pursuit of this legal action" and that such fees were "controlled by David J. Levenkron *as Trustee.*" (emphasis added).

Upon considering the above-described documents and the oral and written arguments of counsel, the Court found that the individuals named as plaintiffs were either not informed or were misinformed about certain facts material to their participation in these lawsuits. Most important, the above communications would lead such individuals to believe that they would participate in a *class action* while, in fact, they were individually named as plaintiffs in these actions. Moreover, these individuals were not properly apprised of their potential liability for payment of defendants' costs of suit and/or attorneys fees in excess of their $100.00 contributions should they be unsuccessful in these suits. Nor were these individuals advised of the possibility that they might have to travel to Los Angeles at their own expense to appear for the taking of depositions and for trial.

The Court concluded from all the evidence before it that the individuals named as plaintiffs in these lawsuits (with the sole exception of Mr. Levenkron who was himself a named plaintiff in one of the suits) did not knowingly employ or authorize the Mackey firm to act as their attorneys in commencing or prosecuting these actions in their names. On the contrary, the lawsuits were filed by the Mackey firm solely on the authority of David Levenkron, and without the *knowing consent* or authority of the other individuals named as plaintiffs.

Thus, on November 12, 1974, the Court, upon motion by the defendants, dismissed the seven lawsuits in which any defendant had appeared (except as

---

1. These four lawsuits with unserved defendants include Case Nos. 74–435–WMB, 74–436–WMB, 74–443–WMB and 74–445–WMB.

2. A copy of one completed questionnaire is attached to this Court's Order of Dismissal issued on November 12, 1974.

to Mr. Levenkron himself). However, this November 12th Order of Dismissal granted leave to each individual named as plaintiff in those seven actions to move the Court for reconsideration of the Order of Dismissal within forty-five days from the entry of the Order. The Court directed in its Order that such "motions for reconsideration" were to be "supported by evidence of the express consent of the moving party to the prosecution of this action in his name and for his benefit".

## II

### THE MOTIONS FOR RE-CONSIDERATION

In support of motions for reconsideration, on November 25, 1974, the Mackey firm sent to each individual who had paid $100.00 to Mr. Levenkron, a form "Retainer Agreement". Form cover letters were sent along with the Retainer Agreements implying that the Court "required" the individuals to sign and return said agreements, or suggesting it was "necessary" that they do so. One form of cover letter was sent to those individuals named in these lawsuits. A second form was sent to those individuals who had submitted $100.00, but who were not yet named in any lawsuit. A third form of cover letter was sent to those individuals named in the four lawsuits in which no defendant had been served and which were not subject to the November 12th Order of Dismissal. Additionally, those individuals named as plaintiffs whose actions had been dismissed were sent a copy of the November 12th Order of Dismissal. At the same time as these Retainer Agreements and cover letters were sent by the Mackey firm, Mr. Levenkron sent another Newsletter dated November 25, 1974, a copy of which has been submitted to the Court.

Within the time allowed, the Mackey firm filed Motions for Reconsideration on behalf of all individuals who had signed and returned the Retainer Agreements, claiming that these agreements evidence the express consent of each individual to the prosecution of this suit. However, the Court determined that the above-described Retainer Agreements did not constitute a knowing consent but rather, when taken together with the cover letters and the November 25th Newsletter, involved serious misstatements or omissions of material facts. These included, among others:

(a) Statements that implied that this Court had *ordered* the individuals to sign the Retainer Agreements;

(b) Statements that there would be no individual liability for defendants' costs or attorneys' fees;

(c) Statements that implied that there was a strong likelihood that plaintiffs would succeed in this litigation;

(d) Statements that Mr. Levenkron, on behalf of the property owners, had "set aside" a contingent fund to cover defendants' costs;

(e) The failure to advise that any individual could withdraw from this litigation if he wished to do so without prejudice to his rights;

(f) The failure to disclose that more than 700 of the individuals who had paid Levenkron the $100.00 registration fee had never been named as plaintiffs in any action;

(g) The failure to disclose to those who did not receive a copy of the Court's November 12th Order of Dismissal that the Court had determined that the Mackey firm had not been properly retained to represent any individuals other than Mr. Levenkron;

(h) The failure to disclose the manner in which Mr. Levenkron actually controlled and disposed of the registration fee funds.

In order to determine the existence and extent of the above-listed misstatements and omissions, the Court held a series of hearings. During these hearings, the Court on numerous occasions

requested specific information from the Mackey firm regarding arrangements between Levenkron, the Mackey firm, and the prospective plaintiffs. Since the additional information provided by the Mackey firm was incomplete and raised still further questions, the Court called Mr. Levenkron to testify at one of the later hearings.

## III

### DISCLOSURES MADE DURING THE SERIES OF HEARINGS ON THE MOTIONS FOR RECONSIDERATION

Hearings on the Motions for Reconsideration were held before the Court in January, February and March, 1975. Mr. Levenkron testified at the February 7th hearing. These hearings disclosed the following facts pertaining to the representation of the individuals who had paid the $100.00 registration fee to Mr. Levenkron.

As of December 31, 1974, a total of 2,191 individuals had each paid a registration fee of $100.00 to Mr. Levenkron, resulting in the creation of a fund containing *$219,100.00*. Of this fund, $110,238.00 has been paid by Levenkron to the Mackey firm as a retainer to cover initial legal fees and the costs of mailings, depositions, and other costs expended in the prosecution of these legal actions. The Mackey firm has been billing against this retainer fund since January, 1974, for services rendered at the rate of $50.00 per hour for members of the firm, $30.00 per hour for associate attorneys, $10.00 per hour for para-legal assistants, and for reimbursement of all actual costs incurred. Since January, 1974, more than one half of this retainer fund has been expended for legal fees and costs.

It should be emphasized that this $110,238.00 retainer to the Mackey firm is *not* being paid on a contingency basis. Under the agreement between Mr. Levenkron and the Mackey firm, the firm is entitled to bill against and retain the entire amount of the fund *even if the prospective plaintiffs lose the lawsuits*. The agreement provides that if the prospective plaintiffs win the lawsuits, the Mackey firm is to receive twenty percent (20%) of the money recovered by such plaintiffs *in addition to* the $110,238.00 retainer fee. Thus, the "contingency" arrangement described in the individual Retainer Agreements and in various other communications to the prospective plaintiffs only applied *over and above* the $110,238.00 payment out of the retainer fund. This arrangement was either misstated or unclearly communicated to the prospective plaintiffs.

The remainder of the registration fee fund, approximately $109,000.00, has been controlled solely by Mr. Levenkron and has *not* been "deposited in a trust account" as he represented. Out of this money, Mr. Levenkron has paid *salaries* to himself and his wife for their work in connection with this litigation. Mr. Levenkron has paid the sum of $30,000.00 to himself. He has stated to the Court that this amount represents compensation for approximately 3,000 hours of his time at an hourly rate of $10.00, commencing in January of 1973. It should be noted that a portion of the time charged against the fund was for alleged services rendered prior to the collection of the registration fees.

In addition, Mr. Levenkron has stated to the Court that he has devoted a total of 5,360 hours to these activities during the period January 1, 1973 to December 31, 1974, and that an additional $23,600.00 is due him from the registration fee funds.

Mr. Levenkron has paid the sum of $5,623.89 to his wife as salary for secretarial services rendered during the period January 1, 1973 to December 31, 1974, at an initial rate of $3.37 per hour and since October, 1973, at the flat rate of $210.00 per month. In addition, Mr. Levenkron has stated to the Court that

$752.00 remains due to his wife for services rendered.

Mr. Levenkron testified that he and his wife maintained certain contemporaneous records to justify the number of hours they have "billed" to the fund. However, when requested by the Court to produce such records, Mr. Levenkron was unable to do so. He only had records prepared since these hearings commenced which were summaries of estimations of hours worked.

It was further disclosed at these hearings that Mr. Levenkron, in exercising his sole authority over disbursement of the registration fee funds, paid to himself or for his benefit, the following additional amounts totaling nearly $14,000.00:

(a) $3,120.00 as *rent reimbursement* for the use of part of his apartment as an office for activities in connection with this litigation. This payment represents $130.00 per month, or forty seven percent (47%) of his monthly rent of $275.00, for the period January 1, 1973 to December 31, 1974;

(b) $9,314.07 as reimbursement for expenses which he claims to have personally incurred during the period 1966–1968 for compilation of what he terms a "Library of Information" relating to development in the Salton Sea area. This amount includes reimbursement of expenses for architects' fees and design costs for a medical research facility he proposed for the Salton Sea area at that time, and for expenses of presentations by him to public agencies in support of such plans. It is noted that these expenses were incurred several years before the collection of the registration fees or the filing of these cases;

(c) $1104.34 for automobile and travel expenses in connection with six organiza-

tional meetings he held in the fall of 1973, plus reimbursement for the costs of a rented automobile used by him for a two-month period;

(d) $233.05 for entertainment expenses incurred by him presumably in connection with Association business.

Finally, Mr. Levenkron testified that he has withdrawn additional sums from the registration fee fund through December 31, 1974, totaling over $9,000.00 for payment of expenses in connection with stationery and printing ($2,557.21), postage ($3,555.28), photographic work ($462.44), accounting fees ($1,051.75), property owners lists ($267.51), telephone ($391.64), rental of meeting halls ($925.79), and other expenses ($163.06).

In summary, out of the original $219,100.00, Levenkron has disbursed all but $51,501.40. These remaining funds are still under the exclusive control of Mr. Levenkron. Of the remaining amount, Levenkron claims that he and his wife are still owed $24,352.00; and $25,000.00 has been "earmarked" to pay defendants' costs. Thus, there remains only $2,149.40 in the fund that is uncommitted and available for further expenses in this litigation.

The Court was further informed by Mr. Levenkron that the Salton City Area Property Owners Association is a fictitious name under which he is doing business individually and which has not yet been formally set up as an "organization".

In the course of these hearings it was also disclosed that prior to the filing of these individual actions, the Mackey firm had filed two class actions in the Los Angeles County Superior Court alleging fraud in the sale of real property in the Salton Sea area.[3] These class actions remain on file and could possibly

3. The two actions were filed by a predecessor of the Mackey firm, Ted L. Mackey & Associates, and the complaints were signed by Mr. Leslie Klein. The cases are *Endres S. Kanozsai et al. v. Salt and Sea Development Co., Inc. et al.*, No. C–50821, filed on

February 26, 1973 in the California Superior Court, County of Los Angeles; and *Bridges et al. v. Salton Sea Mar Vista Estates etc., et al.*, No. C–48617, filed on January 29, 1973 in the California Superior Court, County of Los Angeles.

be prosecuted at some point in the future for the benefit of each individual named as a plaintiff herein. In that event, the members of the class would not be required to pay any registration fee or be responsible for payment of attorneys' fees or costs other than as allowed by the Court out of any recovery. None of these facts were disclosed to the potential plaintiffs in these cases.

At one point during these hearings, the Court inquired how the Mackey firm intended to represent the interests of the individual plaintiffs in the event of any *settlement* negotiations. The Mackey firm responded that it would abide by a majority vote of the named plaintiffs in making such decisions. Thus, an individual plaintiff could not decide whether to accept or reject a proposed settlement offer made to him but would be required to conform to the will of the majority of the plaintiffs represented by the Mackey firm. Unless otherwise agreed to, each individual plaintiff has the right to determine whether he desires to pursue his lawsuit or accept an offer of settlement. The position of the Mackey firm to let the majority determine whether or not to settle would materially affect the rights of each individual plaintiff, given the high probability that some plaintiffs would have substantially stronger claims than others.

The prospective plaintiffs had never been advised or informed of any arrangements regarding settlement. Instead, the Mackey firm had unilaterally decided upon a procedure which deprived each individual plaintiff of his right to approve or disapprove his own settlement, and had intended to use this procedure without providing the individual plaintiffs the information necessary to consent or object to it. At the hearings, the Mackey firm eventually retracted its original "majority rule" position regarding settlement.

From the information disclosed during these hearings, from all other evidence before the Court, and from the arguments of counsel, the Court concludes that the prospective plaintiffs were so inadequately informed by the "representatives" about the true nature of their participation in these proceedings that they could not have knowingly consented to the prosecution of these actions on their behalf by the Mackey firm. Thus, the Motions for Reconsideration are denied and the November 12th Order of Dismissal is reaffirmed.[4] Note that the Court, by this Order, for the reasons stated herein, also dismisses those lawsuits which were not subject to the earlier orders of dismissal and Motions for Reconsideration.

## ORDER

Having reviewed the briefs, documents and evidence submitted in support of and in opposition to the Motions for Reconsideration, having received oral and documentary evidence in support of and in opposition to said Motions, and having considered the issues raised herein as they relate to all of these actions,

## NOW THEREFORE IT IS HEREBY ORDERED THAT:

1. The Motions for Reconsideration of this Court's Order of Dismissal of November 12, 1974, on behalf of certain individuals named as plaintiffs and others not named as plaintiffs, be, and the same hereby are, denied and the Court hereby reaffirms its Order of November 12, 1974, dismissing Case Nos. 74–437–WMB, 74–438–WMB, 74–439–WMB, 74–440–WMB, 74–441–WMB, 74–442–WMB and 7–444–WMB without prejudice as to all individuals named as plaintiffs therein other than David J. Levenkron.

2. Case Nos. 74–435–WMB, 74–436–WMB, 74–443–WMB, and 74–445–WMB are dismissed without prejudice as to all individuals named as plaintiffs therein.

4. Note that the action in which Mr. Levenkron is a named plaintiff has not been dismissed *as to him.*